**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CARL L. BRINEGAR, | : | Case No. 3:16-cv-60 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATIONS[1]

---

### I.  <u>Introduction</u>

Plaintiff Carl L. Brinegar brings this case challenging the Social Security Administration's denial of his applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income.  He applied for benefits on May 23, 2012, asserting that he could no longer work a substantial paid job due to chronic pain, bilateral carpal tunnel syndrome, right shoulder post-surgery pain, left knee post-surgery pain, right knee pain, headaches, scoliosis, chronic nose bleeds, depression, anxiety, and a learning disorder.  Administrative Law Judge (ALJ) James I. K. Knapp concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record (Doc. #6), and the record as a whole.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings.  The Commissioner asks the Court to affirm ALJ Knapp's non-disability decision.

## II.  <u>Background</u>

Plaintiff asserts that he has been under a "disability" since January 1, 2009.  He was thirty-six years old at that time and was therefore considered a "younger person" under Social Security Regulations.  He has a limited education.

### A.  **Plaintiff's Testimony**

Plaintiff testified at the hearing before ALJ Knapp that he has pain in his right shoulder, left knee, and lower back.  (Doc. #6, *PageID* #112).  He takes Vicodin for the pain but it only makes the pain in his shoulder and knee tolerable and does not help his back pain.  *Id.* at 112-13.  He had surgery on his right shoulder and attended physical therapy.  *Id.* at 113.  He hopes to see a surgeon to discuss surgery on his shoulder again. *Id.* at 123.  He has not had any other treatment for his knee or back.  *Id.* at 113-14. Plaintiff estimated that his physical problems are getting worse over time.  *Id.* at 123.

Plaintiff had one seizure in the summer of 2013.  *Id.* at 114.  He has not had any other seizures but he began experiencing blackout spells.  *Id.*  He has the spells two to three times per week, and they can last an entire day.  *Id.* at 114-15.  He takes Topamax for the spells but continues to have them.  *Id.* at 115.

Plaintiff also has depression.  *Id.* at 115.  When he is depressed, he "end[s] up going and laying down."  *Id.*  His depression makes him moody, really agitated, and easily irritated.  *Id.*  He gets angry every day, and it is triggered by things like excessive noise.  *Id.* at 125.  He attends counseling with Melinda Rhoades and obtains medication from Dr. Tasnin at Day-Mont.  *Id.* at 116, 121.  Dr. Tasnin prescribed Brintellix, Remeron, Lorazapam, and Abilify.  *Id.* at 117.  He has been on medication for depression or anxiety for over two years.  *Id.*  He testified that although his other medications help, his newest medication, Brintellix, "seems to help a lot" by making him "feel more upbeat . . . ."  *Id.*  Plaintiff also struggles with concentration and memory.  *Id.* at 125.  For example, he recently could not remember his own phone number when filling out paperwork.  *Id.*  Plaintiff estimated that his psychological problems are staying the same over time.  *Id.* at 123.

Plaintiff last worked as an automobile mechanic in 2009.  *Id.* at 112.  As a mechanic, he was required to lift engines, some weighing over one-hundred pounds.  *Id.* He was terminated after he tore a muscle in his shoulder and was unable to return to work.  *Id.*

Plaintiff did not graduate from high school.  *Id.* at 112.  The last grade he completed was ninth grade.  *Id.* at 122.  In grade school, he took learning-disabled classes, but in middle and high school, he attended regular classes.  *Id.* at 122-23.

Plaintiff lives with his girlfriend and four-year-old son.  *Id.* at 111.  His girlfriend's mother recently moved in "to help take care of the day to day chores of the house and watching [his] son."  *Id.* at 119.  During a typical day, Plaintiff sits at home,

3

watches TV, and cares for his son. *Id.* at 118. He does not cook meals, clean up dishes, sweep, vacuum, do laundry, or do yardwork. *Id.* at 119. He does not go grocery shopping and very rarely visits other people. *Id.* He used to drink alcohol but quit in April 2013. *Id.* He sleeps six hours per night on average. *Id.* at 120. He estimated that he can walk for one hour before needing to sit down and rest, stand for one hour, and sit for three hours. *Id.* He can lift approximately ten pounds. *Id.* He has not driven a car for six or seven months because of the blackouts and seizure. *Id.* at 111. Before his seizure, he drove every day. *Id.* at 112.

### B. Dr. Mary Buban's Testimony

Dr. Buban, a clinical psychologist, also testified at the hearing before ALJ Knapp. She first discussed two of Plaintiff's medications, noting that Abilify is sometimes prescribed to individuals who have medication-resistant major depressive disorder and Brintellix is specifically for treatment of major depressive disorder. *Id.* at 127. She then explained that Plaintiff reported depression and anxiety throughout the record but they did not appear to be severe until after the seizure. *Id.* at 127-28.

Dr. Buban opined, "The problem with the record is there's . . . the complaint of memory loss, and yet nobody has evaluated it, not the psychiatrist, not his therapist, and it wasn't evaluated by the neurologist either." *Id.* at 131-32. Both his medications and his conditions may impact his memory. *Id.* at 132. She recommended that his memory problems be investigated further. *Id.*

Plaintiff's attorney noted that "psychomotor retardation" appeared in Plaintiff's recent records. *Id.* at 134. Dr. Buban explained that it is "a slowing down of movement."

4

*Id.*  She opined that Plaintiff needs further evaluation, probably by neurology, because psychomotor retardation could be caused by his psychiatric conditions, seizure disorder, or medication.  *Id.* at 134-35.

Based on the record at the time of the hearing, Dr. Buban recommended that due to his irritability and low frustration tolerance, he should not have contact with the public but can have occasional contact with supervisors.  *Id.* at 133-34.  She reiterated that further evaluation was needed:  "I don't doubt that he experiences anxiety and depression.  I know he experiences irritability and frustration.  He's complaining of memory.  What we need to know is what severity level [those are] at."  *Id.* at 133.

### C.    Medical Opinions

#### i.  Aaron Hanshaw, D.O.

Dr. Hanshaw, Plaintiff's primary-care physician, completed a questionnaire concerning Plaintiff's impairments on June 14, 2010.  *Id.* at 551-53.  Dr. Hanshaw diagnosed anxiety and osteoarthritis in Plaintiff's right shoulder and knee.  *Id.* at 552. Additionally, Plaintiff has pain with movement in his right shoulder and pain in his knee with ambulation.  *Id.* at 553.

On January 24, 2014, Dr. Hanshaw completed interrogatories regarding Plaintiff's impairments.  *Id.* at 968-75.  He noted that he treats Plaintiff for chronic back, neck, and shoulder pain, GERD, anxiety, and depression.  *Id.* at 968.  He opined Plaintiff could not be prompt and regular in attendance, explaining, "[Patient] has kept [appointments with] me but I don't see him keeping employment."  *Id.* at 969.  Additionally, Plaintiff's chronic pain and mental issues could deter his abilities to demonstrate reliability or

withstand the pressure of work without significant risk of decompensation or worsening of impairments.  *Id.* at 970.  He could not complete a normal work day or work week without interruptions from psychological and physically based symptoms and perform at a consistent pace without unreasonable numbers and lengths of rest periods.  *Id.*

Dr. Hanshaw opined that Plaintiff can occasionally lift five to ten pounds and frequently lift two to five pounds.  *Id.* at 971.  He explained, "I've seen him attempt to carry [his] child [after a] visit [without] success."  *Id.*  Plaintiff can stand without interruption for less than one hour for a total of two hours in an eight-hour day.  *Id.*  He can sit for less than two hours without interruption for a total of less than three hours in an eight-hour day.  *Id.* at 972.  Due to Plaintiff's decreased coordination of his core muscles, he can only occasionally stoop and kneel and never climb, balance, crouch, or crawl.  *Id.*  His impairments decrease his abilities to speak, reach, handle, finger, feel, and push/pull.  *Id.* at 973.  His is also restricted from exposure to heights, moving machinery, chemicals, temperature extremes, vibration, and fumes.  *Id.*  Dr. Hanshaw noted that he is "unable to do much besides care [for himself and] child [with] the mother."  *Id.* at 974.  He concluded that Plaintiff does not have the residual functional ability to do sedentary work on a sustained basis.  *Id.* at 975.

### ii.  Rokeya Tasnin, M.D.

Plaintiff's treating psychiatrist, Dr. Tasnin, completed a mental impairment questionnaire on April 24, 2014.  *Id.* at 949-52.  Dr. Tasnin noted that she has seen Plaintiff every two months since August 20, 2012.  *Id.* at 949.  She diagnosed major depressive disorder, recurrent severe without psychotic feature, and anxiety disorder, not

otherwise specified (NOS).  *Id.*  She identified the following signs and symptoms:  poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbances, emotional lability, recurrent panic attacks, anhedonia or pervasive loss of interests, psychomotor retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, blunt, flat, or inappropriate affect, decreased energy, and generalized persistent anxiety.  *Id.*

Dr. Tasnin noted that Plaintiff's treatment includes medication, specifically Abilify, Brintellix, Remeron, Topamax, Ativan, and his response has been fair.  *Id.* at 950.  His prognosis is guarded.  *Id.*  She opined Plaintiff impairments lasted or can be expected to last at least twelve months.  *Id.*  On average, his impairments and treatment would cause him to be absent from work more than three times per month, and in an eight-hour day, he would be distracted by his psychological symptoms two-thirds of the time.  *Id.* at 951.

Dr. Tasnin opined that Plaintiff has marked restrictions of activities of daily living and extreme difficulties in maintaining social functioning; deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and episodes of deterioration or decompensation in work.  *Id.*  When asked if she believed Plaintiff would be unable to perform work activities without consideration of substance abuse and only considering the additional impairments, she responded, "This client does not use illicit drugs or alcohol.  I believe this client would be unable to perform those work activities."  *Id.* at 952.

7

### iii.  Damian M. Danopulos, M.D.

Dr. Danopulos examined Plaintiff on September 17, 2010.  *Id.* at 564-73.  He noted that Plaintiff's right shoulder and left knee revealed normal but painful motions and no unilateral arm/leg atrophy existed.  *Id.* at 567-68.  Additionally, his gait was normal without ambulatory aids.  *Id.* at 564, 567.  Plaintiff reported pain in his upper right abdomen area, and he experienced pain when Dr. Danopulos pushed on it.  *Id.*  566, 568.  Further, Plaintiff has suffered from depression and anxiety for the last two to five years and has a hot temper.  *Id.* at 565, 568.

"The objective findings were: 1) Right shoulder post surgery arthralgias, 2) left knee post surgery arthralgias, 3) sensitivity by palpation in the abdomen without any specific problems suggested, and 4) depression and anxiety."  *Id.* at 568.  Dr. Danopulos concluded, "His ability to do any work-related activities is affected in a negative way from his right shoulder and left knee arthralgias plus sensitivity in the abdomen but mainly from his mental disturbance with severe anxiety and hot temper with highly exaggerated deep tendon reflexes."  *Id.* at 569.

### iv.  Brian R. Griffiths, Psy.D.

Dr. Griffiths evaluated Plaintiff on September 1, 2012.  *Id.* at 724-30.  He diagnosed depressive disorder NOS, anxiety disorder NOS, and alcohol dependence, full-sustained remission by self-report.  *Id.* at 729.  Dr. Griffiths assigned Plaintiff a GAF score of 60, indicating moderate symptomatology.  *Id.*  He noted Plaintiff's affect was reactive and his mood was somewhat dysphoric.  *Id.* at 727.

Dr. Griffiths noted that Plaintiff appeared to be of low intelligence, had no difficulty following simple instructions during the evaluation, and performed poorly on Digit Scan. *Id.* at 729.  He opined that Plaintiff may have "problems remembering and carrying out basic work-related activities in a timely and consistent manner." *Id.* at 729-30.  Although Plaintiff was able to follow the conversation in the examination, he had difficulty performing serial sevens. *Id.* at 730.  Dr. Griffiths suggested, "It is possible that his emotional problems interfere with his ability to pay attention and concentrate.  In addition, the limited energy, easy fatigability and poor frustration tolerance that often accompany depression may interfere with task persistence and pace." *Id.*  Further, Plaintiff's "anxiety and depression may interfere with his ability to effectively interact with coworkers, supervisors and the general public, to some extent." *Id.*  And, "the stress and pressures associated with day-to-day work activity might increase anxiety hampering decision-making abilities, but might also exacerbate depressive symptomatology leading to withdrawal and slowed work performance. *Id.*

### v.  Giovanni M. Bonds, Ph.D.

Dr. Bonds evaluated Plaintiff on July 9, 2014, and with the assistance of Margaret Glaser, M.A., psychology assistant, administered the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV) and Wechsler Memory Scale – Fourth Edition (WMS-IV). *Id.* at 999-1011.  Dr. Bonds noted that Plaintiff's mood seemed depressed, his affect was flat, and he seemed nervous. *Id.* at 1003.

On the WAIS-IV, Plaintiff obtained a Verbal Comprehension Index of 80, a Perceptual Reasoning Index of 73, Working Memory Index of 74, Processing Speed

Index of 68, and a Full Scale IQ score of 70. *Id.* at 1004. His Verbal Comprehension score falls in the low-average range, his Perceptual Reasoning, Working Memory, and Full-Scale IQ scores are in the borderline range, and his Processing Speed score falls in the extremely low range. *Id.* at 1005. Dr. Bonds opined that the significant difference between Plaintiff's Full-Scale IQ score and his General Ability Index indicates that his processing speed is lowering his overall cognitive functioning. *Id.*

On the WMS-IV, Plaintiff obtained an Auditory Memory Index of 67, a Visual Memory Index of 63, a Visual Working Memory Index of 80, an Immediate Memory Index of 58, and Delayed Memory Index of 66. *Id.* at 1005. All but his Visual Working Memory Index score fall in the extremely low range. *Id.* His Visual Working Memory Index score falls in the low-average range. *Id.*

Dr. Bonds diagnosed alcohol dependence, reported in sustained-full remission; anxiety disorder NOS; and borderline intellectual functioning. *Id.* at 1007. He assigned a GAF score of 55. *Id.* Dr. Bonds opined, "[Plaintiff] is likely to have some difficulties with work pressures and demands for working around many people, dealing with the public and performing work task consistently. *Id.* at 1008.

### vi. State Agency Record-Reviewing Physicians

Gerald Klyop, M.D., reviewed Plaintiff's records on August 24, 2012. *Id.* at 168-82. He opined Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift/carry ten pounds. *Id.* at 176. Additionally, he could stand and/or walk for six hours in an eight-hour day and sit for six hours. *Id.* Plaintiff's ability to push/pull is unlimited, other than the limitations for lifting and/or carrying. *Id.* He could occasionally climb

10

ramps/stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds. *Id.* at 177. His ability to reach right overhead is limited. *Id.* He should avoid concentrated exposure to hazards such as machinery and heights. *Id.* at 178. Dr. Klyop concluded that Plaintiff was not disabled. *Id.* at 181.

On January 13, 2014, Esberdado Villanueva, M.D., reviewed Plaintiff's records and agreed with all but one of Dr. Klyop's findings. *Id.* at 200-16. Dr. Villanueva found that Plaintiff should avoid all exposure to hazards. *Id.* at 211. However, when asked for an explanation, he, like Dr. Klyop, noted "seizure." *Id.* at 211-12.

On September 29, 2010, Ali Shadchehr, M.D., reviewed Plaintiff's records as part of a previous application for benefits. *Id.* at 154-66. He largely reached the same conclusions as Dr. Klyop and Dr. Villanueva. However, there are a few key differences. He opined Plaintiff could occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds. *Id.* at 161. Further, Plaintiff's ability to push and/or pull is limited in his right upper extremity. *Id.* He could frequently climb ramps/stairs, kneel, crouch, and crawl, and his ability to balance and stoop is unlimited. *Id.* at 161-62. Dr. Shadchehr agreed with Dr. Villanueva that Plaintiff should avoid all exposure to hazards. *Id.* at 163.

### vii.  State Agency Record-Reviewing Psychologists

On September 17, 2012, Dr. Robelyn Marlow, Ph.D., reviewed Plaintiff's records. *Id.* at 168-82. She opined Plaintiff has a mild restriction in activities of daily living and difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. *Id.* at

175.  She found two severe impairments:  disorders of back-discogenic and degenerative and affective disorder.  *Id.* at 174.  Further, Dr. Marlow opined that he does not have understanding and memory limitations; social interaction limitations, or adaptation limitations.  *Id.* at 178-79.  Plaintiff does have sustained concentration and persistence limitations.  *Id.* at 178.  Specifically, he is moderately limited in his abilities to maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  *Id.* at 179.

Vicki Warren, Ph.D., reviewed Plaintiff's records on January 14, 2013.  *Id.* at 200-16.  She opined Plaintiff had moderate difficulties in maintaining social functioning, but agreed with Dr. Marlow's findings concerning 'B' criteria.  *Id.* at 208.  She found four severe impairments, including the two found by Dr. Marlow, and also osteoarthritis and allied disorders and anxiety disorders.  *Id.*  She also agreed with Dr. Marlow that Plaintiff does not have understanding and memory limitations or sustained concentration and persistence limitations.  *Id.* at 212.  However, Dr. Warren found that he does have social interaction and adaptation limitations.  *Id.* at 213.  He is moderately limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting.  *Id.*

Kristen Haskins, Psy.D., reviewed Plaintiff's records on October 13, 2010.  *Id.* at 154-66.  She opined that Plaintiff has no restriction in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining

12

concentration, persistence, or pace; and no repeated episodes of decompensation.  *Id.* at

159.  She found two severe impairments: other and unspecified arthropathies and

somatoform disorder.  *Id.*  She also found that alcohol, substance abuse disorders was a

non-severe impairment.  *Id.*  Unlike Dr. Marlow and Dr. Warren, Dr. Haskins found that

Plaintiff did not have sustained concentration and persistence limitations.  *Id.* at 163.  She

agreed, however, with Dr. Warren that Plaintiff has social interaction and adaptation

limitations.  *Id.* at 163-64.  She added that Plaintiff was moderately limited in his ability

to ask simple questions or request assistance and get along with coworkers or peers

without distracting them or exhibiting behavioral extremes.  *Id.*  She also disagreed that

his ability to respond appropriately to changes in the work setting was moderately limited

and instead found that he was not significantly limited.  *Id.* at 164.

## III.   <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits and

Supplemental Security Income to individuals who are under a "disability," among other

eligibility requirements.  *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42

U.S.C. §§ 423(a)(1), 1382(a).  The term "disability"—as defined by the Social Security

Act—has specialized meaning of limited scope.  It encompasses "any medically

determinable physical or mental impairment" that precludes an applicant from

performing a significant paid job—i.e., "substantial gainful activity," in Social Security

lexicon.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines:

"whether the ALJ applied the correct legal standards and whether the findings of the ALJ

are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    **The ALJ's Decision**

As noted previously, it fell to ALJ Knapp to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] He reached the following main conclusions:

Step 1:    Plaintiff has not engaged in substantial gainful employment since January 1, 2009.

Step 2:    He has the severe impairments of dominant right shoulder arthritis; left knee arthritis; anxiety disorder not otherwise specified; alcohol abuse disorder (in early remission since April 13, 2014); and borderline intellectual functioning.

Step 3:    He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a reduced range of light work . . . . [Plaintiff] lacks the residual functional capacity to: (1) lift more than 10 pounds frequently and 20 pounds occasionally; (2) more than occasionally crawl, stair climb, kneel, crouch, or stoop below waist level; (3) climb ladders or scaffolds; (4) more than occasionally reach above the dominant right shoulder; (5) work at unprotected heights or do work involving the operation of moving machinery; and (6) do other than simple, repetitive work with no complex or detailed instructions."

Step 4:    He is unable to perform any of his past relevant work.

Step 5:    He could perform a significant number of jobs that exist in the national economy.

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

(Doc. #6, *PageID* #s 78-99).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 99.

## V.    Discussion

Plaintiff contends that the ALJ failed to give appropriate weight to the treating sources' opinions and erred in finding that Plaintiff was not credible.  The Commissioner maintains that substantial evidence supports both the ALJ's evaluation of the medical sources' opinions and the ALJ's finding that Plaintiff was not fully credible.

### A.    Medical Opinions

Plaintiff asserts that the ALJ erred in rejecting the opinions of his treating physician, Dr. Hanshaw, and treating psychiatrist, Dr. Tasnin.  Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule."  *Rogers,* 486 F.3d at 242 (citations omitted).  The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. Rul. No. 96-2P, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

In the present case, ALJ Knapp found that Dr. Hanshaw's opinion—that Plaintiff is limited to a significantly reduced range of sedentary work because of chronic back, neck, and shoulder pain; GERD; anxiety; and depression—is not entitled to controlling or deferential weight. (Doc. #6, *PageID* #95). The ALJ asserted that his opinion lacks "supportability in, or consistency with, the record." *Id.*

The ALJ addresses the first condition of the treating physician rule—whether Dr. Hanshaw's opinion is supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ contends that Dr. Hanshaw's opinions are not supported by his treatment notes, the consultative examiner's report, or objective, clinical findings. The ALJ found that Dr. Hanshaw's limited residual functional capacity is "grossly disproportionate to the limited findings in [his] treatment records." *Id.* Additionally, "Dr. Danopulos's consultative evaluation noted a normal gait and full but painful motions in the right shoulder and left knee. These findings do not substantiate the residual

17

functional capacity assessed by Dr. Hanshaw." *Id.* The ALJ, earlier in his decision, compares Dr. Danopulos's September 2010 evaluation to Dr. Hanshaw's January 2014 treatment note that indicated Plaintiff had a slow gait, used a cane, and had decreased range of motion in his back. *Id.* at 83 (citing Exhibit 27F, page 8). The ALJ contends, "No objective clinical findings demonstrate deterioration of [Plaintiff's] condition between September 2010 and January 2014 to explain [Plaintiff's] altered gait pattern." *Id.* at 83.

Substantial evidence does not support the ALJ's findings. Dr. Hanshaw's opinions are supported by Dr. Saunder's treatment notes, his own treatment notes, and the consultative examiners' reports.

Dr. Saunders, an orthopedic surgeon, treated Plaintiff for his right shoulder pain and his left knee pain, and her treatment notes support Dr. Hanshaw's opinion. Dr. Saunders first evaluated Plaintiff's knee pain on May 9, 2008. *Id.* at 515. She noted that he underwent a D&S arthroscopy of his left knee in June 2007. *Id.* After surgery, he continued to have pain. *Id.* He tried physical therapy, a cortisone injection, and a hinged brace to reduce the pain but none were effective. *Id.*

Upon examination, Dr. Saunders observed mild swelling throughout his knee and noted tenderness over the medial joint line and patellofemoral grinding on range of motion. *Id.* at 516. Additionally, an MRI from April 7th showed "chondromalacia of the patella articular cartilage with cystic changes in the [posterior cruciate ligament (PCL)]

18

noted."[3]  *Id.*  She referred Plaintiff to physical therapy and prescribed Lodine to help with inflammation.  *Id.*  On June 3, 2008, Dr. Saunders noted that the Plaintiff's knee was still sore and his brace was not working.  *Id*. at 512.

The ALJ asserts, "the record contains no evidence of treatment of the left knee until November 2011."  *Id*. at 89.  Further, "the record does not demonstrate that [Plaintiff] reported significant left knee pain to any treating physician prior to June 2011."  *Id*. at 89.  Neither statement is correct.  He either ignored or overlooked Dr. Saunders' treatment notes from 2008.  Additionally, according to the list of medications, allergies, and problems from Dr. Hanshaw's office, Plaintiff's first appointment, on October 29, 2008, focused on two problems: osteoarthritis/knee and depression.  *Id*. at 996.

Dr. Saunders' treatment of Plaintiff did not end in 2008.  More than three years later, on November 8, 2011, Dr. Saunders noted that Plaintiff presented again with left knee pain.  *Id*. at 606.  He told her that within the last year, his pain increased.  *Id*. at 606.  An MRI from November 12, 2011 revealed chondromalacia under his kneecap and a cyst adjacent on his fibular head.  *Id*. at 604, 618.  Dr. Saunders opined that she did not see enough to put him through surgery.  *Id.* at 605.  She and Plaintiff agreed they would continue to watch it.  *Id.*

---

[3] Chondromalacia of the patella is the "softening and breakdown of the tissue (cartilage) on the underside of the kneecap (patella)."  U.S. Nat'l Library of Med., *Anterior Knee Pain,* MEDLINE PLUS, https://medlineplus.gov/ency/article/000452.htm.

Dr. Saunders also treated Plaintiff for his right shoulder pain.  On August 18, 2009, Plaintiff reported that for the last three to four months, the pain in his shoulder increased gradually.  *Id*. at 513.  Dr. Saunders requested an MRI and it revealed a tear of the labrum at the insertion site of the bicipital tendon with fraying and extension into the labrum.  *Id*. at 532.  Plaintiff underwent surgery to repair the tear on September 14, 2009.  *Id*. at 497.  Dr. Saunders noted throughout his recovery that he continued to experience pain in his shoulder.  *Id*. at 509-10.  In December 2009, she ordered an MRI, and it came back as normal.  *Id*. at 510.  On January 15, 2010, she noted, "I think he is going to need manipulation of his shoulder with a D&S arthroscopy, possible capsular release."  *Id.*  On the same day, she indicated Plaintiff lost his health insurance.  *Id.*  Dr. Saunders' notes illustrate a long history of Plaintiff's incessant pain and his numerous attempts at reducing the pain in both his knee and shoulder.

Dr. Hanshaw's treatment notes also support his opinion.  Significantly, he, or a physician from his office, has treated Plaintiff since 2008 on a fairly regular basis.  *Id*. at 993-96.  As Plaintiff's primary-care physician, he not only examined Plaintiff himself, he also referred Plaintiff to specialists and received reports detailing their treatment of him.  *See id.* at 667-71, 746-49.

Dr. Hanshaw's notes document Plaintiff's recurring complaints of severe pain and his observations during examinations.  For example, Dr. Hanshaw noted a decreased range of motion in Plaintiff's shoulder at almost every appointment.  *Id*. at 628, 630, 634, 636, 642, 653, 734.  On January 8, 2014, he also noted that Plaintiff "was in [the ER] recently [because] of worsening shoulder problems and turned out ok . . . ."  *Id*. at 982.

On June 22, 2011, Dr. Hanshaw noted that Plaintiff reported that his knee pain was not helped by medication and his left knee hurt with ambulation. *Id*. at 640. A few months later, on September 21, 2011, Dr. Hanshaw noted that Plaintiff reported chronic knee pain and was wearing a brace. *Id*. at 646-47. On January 16, 2013, Dr. Hanshaw noted he was using a cane to walk. *Id*. at 964.

The consultative examiners' reports further support Dr. Hanshaw's opinion. Dr. Danopulos noted that Plaintiff arrived at the examination with a cane that he reported using on and off for six years. *Id*. at 564. Despite Plaintiff's normal gait and full but painful motions in his right shoulder and left knee, he concluded that Plaintiff's ability to do work-related activities is affected in a negative way from his right shoulder and left knee arthralgias . . . ." *Id*. at 569.

Reports from the psychiatric consultative examiners also support Dr. Hanshaw's opinion. For example, Dr. Bonds noted that Plaintiff walked with a cane in July 2014. *Id*. at 1003. In September 2012, Dr. Griffiths noted that Plaintiff used a walker. *Id*. at 728. Dr. Flexman, in October 2010, noted a mild gait disturbance and overt pain behavior with standing. *Id*. at 578-79.

In addition to these problems, the ALJ does not discuss the second condition of the treating physician rule—whether Dr. Hanshaw's opinion is not inconsistent with the other substantial evidence in the record. Instead, he broadly asserts that Dr. Hanshaw's opinion lacks consistency with the record. An opinion lacking consistency with the record is not the same as an opinion that is not inconsistent with the record. "Not inconsistent. . . is a term used to indicate that a well-supported treating source medical opinion need not be

supported directly by all of the other evidence (i.e., *it does not have to be consistent with all the other evidence*) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."  Soc. Sec. R. No. 96-2P, 1996 WL 374188, at *3 (emphasis added).  The ALJ does not identify any evidence that conflicts or contradicts Dr. Hanshaw's opinion.

However, even if Dr. Hanshaw's opinion is not entitled to controlling weight under the treating physician rule, the ALJ's review is not complete.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 . . . .").  Soc. Sec. R. No. 96-2P, 1996 WL 374188, at *4.

The ALJ did not weigh Dr. Hanshaw's opinion under the factors.  His conclusory statement concerning consistency does not constitute a good reason for discounting Dr. Hanshaw's opinion.  Further, even if the ALJ's decision considered the "supportability" factor, substantial evidence does not support the ALJ's findings, as explained above.  The ALJ does not address the remaining factors.  For example, he does not address Dr. Hanshaw's significant history treating Plaintiff or the frequency of their appointments.

When an ALJ fails to provide good reasons, the Sixth Circuit has made clear: "We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the weight assigned to a treating physician's opinion."  *Hensley v. Astrue,* 573 F.3d 263, 267 (6th Cir. 2009) (citation and footnote omitted).

The ALJ also found that Dr. Tasnin's opinion is not entitled to controlling or deferential weight.  6 at 95.  The ALJ noted that Plaintiff's "limited mental health treatment and three different consultative evaluation simply does not support the level of limitation opined by Dr. Tasnin.  As discussed above, the evidence only supports moderate limitation in [Plaintiff's] ability to maintain concentration, persistence or pace, and no more than mild limitation in the remaining areas of mental functioning."  (Doc. #6, *PageID* #95).  The ALJ does not provide any further explanation for the weight he assigned Dr. Tasnin's opinion.

ALJ Knapp's limited analysis of Dr. Tasnin's opinions does not adequately address the treating physician rule.  He only minimally addressed the first condition— whether Dr. Tasnin's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques—and he failed to address the second condition— whether Dr. Tasnin's opinion is not inconsistent with other substantial evidence in the record.  Additionally, similarly to the ALJ's analysis of Dr. Hanshaw's opinion, he failed to weigh Dr. Tasnin's opinion under the required factors.  *See Rogers,* 486 F.3d at 242 ("[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding.") (citation omitted).  The ALJ's one reason does not constitute "good reasons" for discounting Dr. Tasnin's opinion.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[4]

**B.    Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's challenge to the ALJ's assessment of his credibility is unwarranted.

24

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Carl L. Brinegar was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

Date: January 31, 2017        *s/Sharon L. Ovington*
                 Sharon L. Ovington
                 Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).